## Pease v. Doane, Appellant.

*Mortgage—Merger—Deed—Intention.*

A mortgage does not necessarily merge or become extinct by being united in the same person with the fee. When a person becomes entitled to an estate subject to a charge for his own benefit, he may take the estate and keep up the charge. The question in such case is upon the intention, actual or presumed, of the persons in whom the estates are united.

Where a judgment creditor whose judgment is junior to a mortgage, suggests, for purposes of convenience and to save expense, that the owner of the land shall convey his equity of redemption to the mortgagee, and this is done without any of the parties intending that the mortgage debt shall be extinguished, the judgment creditor cannot thereafter claim that there had been a merger, and that his judgment had thereby become a first lien upon the land.  .

Argued Nov. 22, 1906.   Appeal, No. 199, Oct. T., 1906, by defendants, from judgment of C. P. Bradford Co., Sept. T., 1905, No. 91, on verdict for plaintiff in case of Edward E. Pease v. Samuel Doane and O. L. Haverly, terre-tenant and real owner.    Before Rice, P. J., Porter, Henderson, Morrison, Orlady, Head and Beaver, JJ.    Affirmed.

Scire facias sur mortgage.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows :

[It has been held by the courts of this state that " a mortgage does not necessarily merge or become extinct by being united in the same person with the fee ; it may be kept alive where such is the intention of the holder, or the intention or agreement of the parties, or where it would be for the holder's interest or advantage that the lien should be preserved.   In the latter case his intention to keep the mortgage alive will be presumed.   Merger being largely a question of intention, where there is the intention, actual or presumed, of the person in whom the mortgage and fee unite that there shall not be a merger, equity will not hold the mortgage extinguished."   I have quoted this from the opinion of one of the late judges of Supreme Court of this state.] [1]

[Juror: The jury would like to ask and be informed if Dr. Pease could keep his judgment alive after the deed was given, without the consent of Mr. Doane?

The Court: We say to you, further, that where there is a union of the two estates—a union in the same person of the mortgage and the fee—if it is for the benefit of the mortgagee that the obligation shall be kept alive for his protection, the law in that case will not presume a merger. And we quote, as we did in our general charge, what has been said by the Supreme Court upon this question, and I think probably it will throw light on the inquiry that is in your minds: " A mortgage does not necessarily merge or become extinct by being united in the same person with the fee; it may be kept alive where such is the intention of the holder or the intention or agreement of the parties—either one—or where it would be for the holder's interest or advantage that the lien should be preserved. In the latter case his intention to keep the mortgage alive will be presumed. Merger being largely a question of intention, where there is the intention, actual or presumed, of the person in whom the mortgage and fee unite that there shall not be a merger, equity will not hold the mortgage extinguished."

Juror: Will you quote the last few lines over again?

The Court: Merger being largely a question of intention, where there is the intention, actual or presumed, of the person in whom the mortgage and fee unite that there shall not be a merger, equity will not hold the mortgage extinguished.] [2]

Juror: Here is the point: We take it for granted that the man that deeds his property deeds it for the purpose of killing the mortgage and for no other purpose, and he thinks at that time that it is killed, and the man who gets the deed and holds the mortgage believes that he can hold that mortgage good and keep it good. One man thinks that he cannot, and the other thinks he can. It is a little difficult to know just how to construe that.

The Court: We think the last inquiry is covered by the third point presented to the court by the counsel for the plaintiff, and which was affirmed, which is this:

" Merger in Pennsylvania is a question of intention, actual or presumed, of the person in whom the interests are united,

and when it is for the interest of the plaintiff to keep up the charge and collect his mortgage, in the absence of any evidence to show a contrary intention, the law will not presume an intent to merge."

Juror: I think that is satisfactory.

[The Court: This intention must have existed or been formed at the time of the transaction, to keep the mortgage in life. And, as we said, all the circumstances are for you to consider, in arriving at what was the intention of the parties, and of the mortgagee, at the time.] [3]

Verdict and judgment for plaintiff for $1,434.23. Defendant appealed.

*Errors assigned* were (1, 2, 3) above instructions, quoting them.

*Rodney A. Mercur*, with him *J. T. Corbin*, for appellants.— The question of the extinguishment or satisfaction of a mortgage depends on the agreement and intention of the parties, the evidence as to which should be referred to the jury as a question of fact: Jones v. Johnson, 3 W. & S. 276 ; Fleming v. Parry, 24 Pa. 47 ; Oliphant v. Church, 19 Pa. 318 ; Germania Building Assn. v. Neill, 93 Pa. 322; Pennock v. Eagles, 102 Pa. 290 ; Meigs v. Bunting, 141 Pa. 233 ; Safe Deposit & Trust Co. v. Kelly, 159 Pa. 82; Eby v. Hoopes, 10 W. N. C. 315 ; Wentz v. DeHaven, 1 S. & R. 312 ; Girard Trust Co. v. Baird, 212 Pa. 41 ; Vetter v. Vetter, 13 Pa. Superior Ct. 584 ; Van Ormer's Est., 25 Pa. Superior Ct. 234.

*Wm. Maxwell*, for appellee.—A mortgage does not necessarily merge or become extinct by being united in the same person with the fee ; it may be kept alive where such is the intention of the holder or the intention or agreement of the parties : Helmbold v. Man, 4 Whart. 410 ; Penington v. Coats, 6 Whart. 277 ; Bryar's App., 111 Pa. 81 ; Danhouse's Est., 130 Pa. 256 ; Carrow v. Headley, 155 Pa. 96 ; Continental Title & Trust Co. v. Devlin, 209 Pa. 380 ; Moore v. Harrisburg Bank, 8 Watts, 138 ; Lowman v. Lowman, 118 Ill. 582 (9 N. E. Repr. 245) ; Richardson v. Hockenhull, 85 Ill. 124 ; Worcester Nat. Bank v. Cheney, 87 Ill. 602 ; Fellows v. Dow,

58 N. H. 21; Rumpp v. Gerkens, 59 Cal. 496; Gray v. Nelson, 77 Iowa, 63 (41 N. W. Repr. 566); Wallace v. Blair, 1 Grant, 75.

OPINION BY HEAD, J., February 25, 1907:

The doctrine of equitable merger has been often and clearly defined by our courts of last resort. We can therefore but restate it in the terms long since adopted and sanctioned by the highest authority and then determine how far, if at all, it is applicable to the facts of the present case.

"Equity does not favor mergers; and, in law, mergers are said to be odious. It is generally, though not universally true, that merger depends on intention; and it is only in those cases where it is perfectly indifferent to the party in whom the interests have united, whether the charge or term should (or should) not subsist, that in equity the term is merged:" Pennington v. Coats, 6 Whart. 277.

"As a merger is for the benefit of him in whom the two interests unite, it will never take place when it is against his interest, or where it is most for his advantage to keep the charge alive: Dougherty v. Jack, 5 Watts, 456; Helmbold v. Man, 4 Whart. 410. In such a case he may hold the estate, and also a judgment upon it: Zeigler v. Long, 2 Watts, 205. Or a mortgage and also the equity of redemption: Moore v. Harrisburg Bank, 8 Watts, 138; Wallace v. Blair, 1 Grant, 75.

"Merger depends, generally, upon the intention of the parties to be affected by it, and an intention to prevent it will be presumed whenever it is the interest of the party that the incumbrances shall not be sunk in the inheritance:" Kline v. Bowman, 19 Pa. 24.

"A mortgage does not necessarily merge or become extinct by being united in the same person with the fee. When a person becomes entitled to an estate subject to a charge for his own benefit, he may take the estate and keep up the charge. The question in such case is upon the intention, actual or presumed, of the persons in whom the estates are united:" Bryar's Appeal, 111 Pa. 81.

Samuel Doane, being the owner of a tract of land, executed and delivered to the plaintiff the mortgage in suit which became the first lien upon the premises. It seems to be a fact, prac-

tically conceded by the testimony, that the amount of the debt, secured by the mortgage, approximated, if it did not equal, the value of the property. The mortgagor then conveyed the land, thus bound, to his father, Joseph Doane, from whom the title had come to him. The land was then encumbered by judgments in favor of Shoemaker and Haverly, one of the defendants, the liens of which were subsequent to that of the mortgage, and the aggregate amounts of which exceeded that of the mortgage.

Joseph Doane, being thus heavily indebted, fell ill and an arrangement was effected, at the suggestion of Shoemaker, the junior judgment creditor, that he should voluntarily convey his equity of redemption to Dr. Pease, the mortgagee. The only avowed purpose of this was to save the expense that would result from a judicial sale of the property, by the sheriff, if it should occur in the lifetime of the owner, or by the orphans' court in case his sickness should terminate in his death. It is not contended, from the testimony, that either of the parties to this transaction then entertained the idea, much less expressed it, that its effect would be the extinction of the mortgage and the consequent loss of the debt secured thereby. Shortly afterwards Haverly caused an execution to be issued on his judgment. This resulted in a sale by the sheriff, at which, in the face of a formal notice from the plaintiff that his mortgage was in full force and that the purchaser would be required to pay the amount secured by it in addition to his bid, the land was bought in by Haverly for the common benefit of himself and Shoemaker. They now seek to defend against the scire facias sur mortgage on the ground that, by the acceptance of the deed, the mortgage, which represented the greater part of the value of the land, was merged and drowned in the equity of redemption, which, under then existing conditions, was of no practical value at all, and thus the land, now owned by them, has been released from the burden of discharging the plaintiff's debt. Unless it be the province of equity to do iniquity, this would be a strange result to flow from the application of the doctrine of equitable merger.

It is manifest that the merger of the mortgage would be absolutely destructive of the plaintiff's interests. According to all the cases cited and many others, the law, under such cir-

cumstances, would raise no presumption of the existence of any such suicidal intention on the part of the plaintiff. On the contrary, the presumption would be that no such injurious intention could be reasonably predicated of his act. Of course this presumption would not be conclusive; it could be rebutted by evidence that would warrant a jury in finding that a merger had been expressly agreed to, or that the plaintiff's conduct and actions were such as could be only fairly ascribed to such an intention existing in his mind although not formally expressed in words. As already stated there is not the slightest evidence of the expression of an intent to merge and extinguish the mortgage by either of the parties, and as the case was submitted, the verdict of the jury conclusively establishes that no such intention in fact existed, at least in the mind of Dr. Pease, the plaintiff. It is difficult to see how they could have found otherwise. Joseph Doane says the mortgage was not mentioned at the time the deed was made, and that the object in making the deed was to save the expense of a foreclosure proceeding, estimated to be about $100. Shoemaker, who suggested the arrangement and was present at its consummation, gives the following testimony on cross-examination: " Q. It was said there by Dr. Pease, that if anyone else got their pay, they would have to pay his mortgage ? A. Yes, that is the way we understood it and that is the way we talked. Q. That if any of the other creditors of Joseph Doane got their pay they would have to first pay his mortgage? A. Yes, pay his debt. Q. And that was agreed among all three of you ? A. Yes, sir. Q. Then there was no agreement at that time that Dr. Pease was to satisfy his mortgage, was there ? A. No, there was nothing said about the satisfaction of the mortgage.

Here certainly was a substantial foundation, in the testimony of an adverse witness, upon which the jury could rest their conclusion that the plaintiff never intended to destroy his mortgage or surrender his place as the first lien creditor. His subsequent offers to convey the land to the junior creditors or to anyone else who would pay his claim, his notice at the sheriff's sale, his entire conduct and all his proven declarations seem to be in harmony with the conclusion reached by the jury.

The chief weight of the argument advanced by the learned counsel for appellants, in which many cases are cited, seems to

be aimed at establishing the proposition that where an estate in fee is conveyed to one who already owns a lesser estate in the same land, the question of a merger of the latter in the former is one of intention of both parties to the second conveyance, whereas the trial court, so it is alleged, declared it to be a question of intention of the party in whom the two estates united. Assuming the law to be as thus contended for, which we do not concede in the absence of an express agreement to that effect, the argument seems to be more academic than practical. The burden then would be on the appellants to satisfy the jury that both Doane and Pease intended that the mortgage should be merged in the deed. The finding that one of the parties at least had no such intention is just as fatal to the defendants as, and indeed is equivalent to, a formal finding that when the deed was made it was not the intention of both the parties to it that the mortgage should be thereby extinguished.

We see no advantage to be gained by a separate discussion of the several assignments of error, all of which raise substantially the same question. We are all of the opinion that the vital question of fact was fairly submitted to the jury and that the record discloses ample testimony on which the verdict may securely rest.

Judgment affirmed.