## Hope Estate

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

The facts appear from the following adjudication of

KLEIN, P. J., January 29, 1959.—S. Emma P. Hope died on April 13, 1914, leaving a will by which, inter alia, she devised and bequeathed her residuary estate in one-third shares to her trustees in trust to pay the income from their respective shares, upon the terms of a spendthrift trust, to her sister, Annie J. Thompson, and each of her nieces, Helen Thompson Theobald and Lilian Pennell Thompson, for the terms of their respective natural lives. After the death of her said sister, Annie J. Thompson, testatrix devised and bequeathed the principal of her trust estate to her trustees to be held for her said nieces, Helen Thompson Theobald and Lilian Pennell Thompson, "upon the same uses and trusts as are herein expressed for them concerning their share in my said residuary estate."

After the death of her niece, Helen Thompson Theobald, she directed her said trustees:

" . . . to pay divide and distribute, and I do give devise and bequeath the entire net income interest and dividends arising therefrom to each and every her child and children who shall then be living and the issue of any such as shall then be deceased, in equal parts and shares, such issue however taking only the part or share to which his, her or their deceased parent would have been entitled if living until the arrival of the youngest child of my said niece at the full age of twenty-one years.

"And from and immediately after the death of my said niece and the arrival of her youngest child at the full age of twenty one years, then and in such event I do give devise and bequeath the principal of the trust estate of my said niece to each and every her child and children who shall then be living and the issue of any such as shall then be deceased per stirpes and not per capita.

"Should however my said niece die without leaving any child children or issue her surviving, or should

said child or children all die in their minority, then and in such an event I do give devise and bequeath the principal of her said trust estate to my said trustees to be held by them In Trust for my said sister Annie J. Thompson and my niece Lilian Pennell Thompson upon the same uses and trusts as are herein expressed for them concerning their share in my said residuary estate. Provided however that in no event shall any husband of my said niece receive any portion of my estate."

After the death of her niece, Lilian Pennell Thompson, she directed her said trustees:

". . . to pay divide and distribute, and I do give devise and bequeath the entire net income interest and dividends arising therefrom to each and every her child and children who shall then be living and the issue of any such as shall then be deceased, in equal parts and shares, such issue however taking only the part or share to which his, her or their deceased parent would have been entitled if living until the arrival of the youngest child of my said niece at the full age of twenty one years.

"And from and immediately after the death of my said niece and the arrival of her youngest child at the full age of twenty one years, then and in such event I do give devise and bequeath the principal of the trust estate of my said niece to each and every her child and children who shall then be living and the issue of any such as shall then be deceased per stirpes and not per capita.

"Should however my said niece die without leaving any child children or issue her surviving, or should said child or children all die in their minority, then and in such an event I do give devise and bequeath the principal of her said trust estate to my said trustees to be held by them In Trust for my said sister Annie J. Thompson and my said niece Helen Thompson Theo-

bald upon the same uses and trusts as are herein expressed for them concerning their share in my said residuary estate. Provided, however that on no event shall any husband of my said niece receive any portion of my estate."

A copy of the will, certified by counsel to be a true and correct copy, is annexed hereto.

The fund presently accounted for was awarded to the present accountant, as surviving trustee, by adjudication of Lefever, J., dated December 21, 1955, and the occasion of the filing of the present account was the death on August 28, 1958, of Lilian Pennell Thompson, afterwards Walls, without issue, and the resulting termination of the trust. National Newark and Essex Banking Company, Newark, N. J., is stated to be executor under the will of the said Lilian T. Walls, letters being stated to have been granted in Nassau County, N. Y.

Annie J. Thompson, sister of testatrix and cestui que trust as to one-third of the residue, is stated to have died on February 19, 1937, and the statement of proposed distribution recites that by adjudication of this court the entire fund continued for the benefit of Helen Thompson Theobald and Lilian Thompson Walls.

Helen Thompson Theobald, niece of testatrix and cestui que trust as to one-third of the residue, is stated to have died on January 16, 1942, leaving to survive her four children, Herbert Pennell Theobald, Frederick Thompson Theobald, Dorothy T. Poorman and B. Franklin Theobald, of whom B. Franklin Theobald is stated to be now deceased, having survived his mother, the said Helen Thompson Theobald, but having died before the said Lilian T. Walls, surviving cestui que trust, whose death was the occasion of the filing of the present account.

Under the terms of the will quoted above and under the facts and circumstances herein recited, the auditing

judge is requested to determine whether the balance for distribution is distributable in equal one-third shares to Herbert Pennell Theobald, Frederick Thompson Theobald and Dorothy T. Poorman, whose name is stated in the appearance slip of her counsel to be Dorothy Hope T. Poorman, or in equal one-fourth shares among the said Herbert Pennell Theobald, Frederick Thompson Theobald, Dorothy Hope T. Poorman and the estate of B. Franklin Theobald, deceased, of which Sally A. Sigman is stated to be executrix.

Reduced to its simplest terms, the question is whether the remainder interest now distributable by reason of the death of Lilian T. Walls, without issue, should be awarded to the three children of Helen Thompson Theobald, who survived the said Lilian T. Walls, or should be awarded in equal one-fourth shares to the said three children and to the estate of B. Franklin Theobald, as having vested in him by reason of his surviving his mother, the said Helen Thompson Theobald, even though he predeceased the said Lilian T. Walls.

The testamentary plan adopted by testatrix is not at all unusual. It provides for a gift to designated persons of the income from a fixed portion of the corpus of the estate for life with gifts over to the issue of each life tenant of the principal of the share upon which the life tenant was receiving the income. In the event of the death of a life tenant without issue surviving, testatrix bequeathed the principal of the share represented by the deceased life tenant to the trustee to be held in trust for the other cestuis que trustent upon the same terms as those governing the trust to which the transfer was directed to be made.

Usually, under this plan, if the gift under the original trust is vested, or vested subject to being divested upon the occurrence of a contingency, the

secondary fund transferred upon the death of a life tenant without issue also becomes vested in the same manner as the primary gift.

The principle has been enunciated and followed by our courts on many occasions. We will limit our discussion to three cases, however, which are strikingly similar to the present case.

In Straus Estate, 351 Pa. 136 (1945), our former colleague, the late Justice Allen M. Stearne, set forth the facts which are strikingly similar to the instant case, as follows:

"Testator provided for certain trusts for his children for life. The trusts were to end on the death of each life beneficiary and the principal to be distributed to the life beneficiary's living child or children and issue of children deceased. The testator further provided that if any life beneficiary died without issue such share should become part of the same trusts. Such directions are found in the tenth item of the will and read: '. . . In Trust, during the lifetime of my said children respectively, so that upon the death of each of my said children the principal of their several shares shall pass undiminished to the living child or children and issue of children deceased of my said child so dying (such issue taking the share which their parent would have taken if living) ; but if any of my said children should die without leaving child or children living at the time of their respective deaths, or issue then living of children deceased, then I direct that the share of such my child so dying shall fall into the residue of my estate, to be held by my said Executors or Trustees upon the same Trusts and for the same Purposes as I have directed as to the said residue.'

"Sally, one of the daughters and life tenant, was survived by a son, Frederick, who subsequently died testate leaving four children, the appellants. Laura, another of testator's daughters, and also a life tenant,

later died without leaving issue. A one fourth portion of the corpus set aside for the life of Laura is claimed by, and was awarded to, the executor of the estate of Frederick. The four children of Frederick question the correctness of the award."

Justice Stearne ruled that the deceased son's interest was vested upon his surviving his mother and that his estate was also entitled to a share of the one-fourth interest which fell in at the death of Laura without issue. He said:

"Frederick's interest in the corpus of the share upon which his mother enjoyed a life estate was contingent. In order to take, Frederick was required to be living at his mother's death: Frasier v. Scranton Gas & Water Co., 249 Pa. 570, 95 A. 256; Roop's Estate, 274 Pa. 117, 117 A. 787; Benedict's Estate, 70 Pa. Superior Ct. 51. When Frederick did survive his mother, his interest in that portion of the trust became vested: Hinkson v. Lees, 181 Pa. 225, 37 A. 338; McGlinn's Estate, 320 Pa. 389, 182 A. 495. While conceding the correctness of these principles, appellants contend that the words of the will clearly indicate testator's intent to affix the same contingency to the accruing share as he did to the original one, to wit: The survival of Frederick at the death of Laura. We agree with Judge Sinkler, the auditing judge, who said: 'Since the trusts for his children were the only trusts created, it is clear that the testator intended the additional share to be treated as though it had formed part of the original residuary estate. The use of the phrase "then I direct" does not change a vested interest into a contingent interest. The word "then" is used in this will as a conjunction meaning "in that event", not as an adverb meaning "at that time." [Frederick] had a vested interest in the Laura Straus Hibbs share subject only to being divested by the birth of issue to her.' See Packer's Estate, (No. 2), 246 Pa. 116, 92 A. 70; Neel's

Estate, 252 Pa. 394, 97 A. 502; Wheaton Coal Co. v. Harris, 288 Pa. 294, 135 A. 637; McGlinn's Estate, supra."

It is to be noted that the argument presented by Mr. Lower in this case in connection with the use of the expression "then and in such event" was also made and rejected in the Straus case, as quoted above.

In McGlinn's Estate, 320 Pa. 389 (1936), the court said at page 393:

"It may not, however, be amiss to point out what was said long ago in Manderson v. Lukens, 23 Pa. 31, 33: 'The question of vested or contingent is not to be tested by the certainty or uncertainty of obtaining the actual enjoyment; for that would make the character of the estate depend, not upon the terms of its creation, but on the form of the result . . . If there is a present right to a future possession, though that right may be defeated by some future event, contingent or certain, there is nevertheless a vested estate. An unpossessed estate is vested, if it is certain to take effect in possession, by enduring longer than the precedent estate.' At all times after the death of the testator there was a present right in the residuary legatees to a future possession of the fund held in trust for Regina and this right would always exist until actually divested by the contingency provided in the will, namely, the death of Regina with issue."

What Judge Hunter said in Rubicam's Estate, 48 D. & C. 486, 487 (1943, 1944), applies with equal force in the present case:

"We construe this language to mean that the accruing shares shall pass to testator's other children and their issue subject to the same limitations as their original shares. If the original shares had vested in issue, then accruing shares also were vested. In other words, the intention of the testator was not to make

new gifts to children and issue, subject to new conditions and contingencies, but merely to augment cr enlarge the original gifts. See McGlinn's Estate, 320 Pa. 389."

Mr. Noonan, on behalf of one of the residuary beneficiaries, relying upon Selser's Estate, 135 Pa. Superior Ct. 480 (1939), and the many cases cited therein, contends that this is a "pay and divide" case and that therefore the remainders are contingent. We repeat what was said by Lefever, J., in Mirkil Estate, 15 D. & C. 2d 203, 211:

"Exceptants rely upon the so-called 'pay and divide' rule in support of their position that the gifts to the grandchildren were contingent. However, as we have heretofore said: 'In view of the difficulties involved in the application of the "pay and divide" rule, we will not resort to it unless absolutely necessary': Dickson Estate, No. 125, April Term, 1919, decided November 7, 1958, 14 D. & C. 2d 741; Krug Estate, 86 D. & C. 436, 439. See Bald Estate, 385 Pa. 176, 183; and Newlin Estate, 367 Pa. 527, 536. Following this policy we find no need to resort to the 'pay and divide' rule in this case."

Mr. Noonan makes much of the fact that testatrix provided, with respect to the gifts to her two nieces, that "in no event shall any husband of my said niece receive any portion of my estate." He argues that this language indicates a specific intent to keep the property in testatrix's own blood line, and evidenced a clear intent to by-pass estates of beneficiaries dying without issue. We reject this contention without hesitation, however, as overruled by the law's preference for vesting in matters of this character, revealed in the cases hereinbefore reviewed, and by the law's general favoritism for vesting, most recently reiterated in Bald Estate, 385 Pa. 176, 182 (1956), in which the

Supreme Court quoted with approval the following language found in Newlin Estate, 367 Pa. 527, 534:

"Moreover, if it is not clear from the language of the will whether the remainder is vested or contingent, then as Mr. Justice Linn said in Weir's Estate, 307 Pa. 461, 468, 469, 161 A. 730, 'it is necessary to keep in mind the rule "that an interest is to be construed contingent only when it is impossible to construe it as vested": Rau's Estate, 254 Pa. 464, 98 Atl. 1068; that the intention to create a contingent interest "should appear plainly, manifestly and indisputably": McCauley's Est., 257 Pa. 377, 101 Atl. 827 . . . In Marshall's Est., supra, it is said: "The law leans to vested rather than to contingent estates, and the presumption is that a legacy is vested: Carstensen's Est., 196 Pa. 325 [46 Atl. 495]; Tatham's Est., 250 Pa. 269 [95 Atl. 520]; Neel's Est., 252 Pa. 394 [97 Atl. 502]; Rau's Est. [supra]. . . ." ' "

The auditing judge therefore concludes that the remainder interest of B. Franklin Theobald in the share held in trust for Lilian T. Walls was vested, subject to being divested only in the event the said Lilian T. Walls should be survived by issue. One-fourth of the balance of principal shown by the present account will, accordingly, be awarded to his personal representatives.

*Donald E. Hogeland*, for accountant.

*John C. Noonan, Edward S. Lower* and *Frank F. Truscott*, for claimants.

BOLGER, J., April 3, 1959.—The problem involved in this will grows out of the direction of testatrix in disposing of remainder interests under two trusts. Disposition of the remainder is identical in that testatrix directed that upon the death of each life tenant without leaving child, children or issue, or should the children all die in their minority, ". . . then I do give,

420

devise and bequeath the principal of her trust to my said trustees to be held by them in trust for my sister, Annie J. Thompson, and my niece, Helen Thompson Theobald, upon the same uses and trusts as herein expressed for them concerning their share in my residuary estate."

Helen Thompson Theobald, the life beneficiary of one trust, died survived by four children. Lilian Thompson Walls, beneficiary of the other trust, died at a later date without issue.

When Helen T. Theobald died, her children were all of age and distribution of the principal of her trust was made to them. Prior to the death of Lilian T. Walls, B. Franklin Theobald, a son of Helen T. Theobald, died without leaving issue. The auditing judge considered that his share was vested and directed distribution of his share in the Walls' trust to his personal representative.

It is urged on behalf of the three Theobald children who survived Mrs. Walls, that the principal belonging to the Walls' trust was intended to go only to them because the remainder interests in the Walls' trust were contingent.

We are in thorough agreement with the construction of the disputed parts of this will as contained in the adjudication. However, because of the earnestness of counsel for exceptants, it is felt that the reasons set forth in their exceptions should be disposed of categorically. With reference to their mother's trust, the shares of the Theobald children in principal were payable to their issue, if they died before their mother or did not survive the youngest of them attaining 21, but left issue. However, when upon their mother's death the youngest living child of Helen T. Theobald had attained age 21, all of the Theobald children then living had a vested interest in the Walls' trust subject to be

divested; this vested interest could only have been divested by the survival of children of Mrs. Walls and the attainment by the youngest of such children of age 21.

When the sequence of events above recited occurred, the corpus of the Walls' trust, in accordance with its terms, was channeled into the Theobald trust and now becomes distributable in accordance with its provisions. There is nothing contained in the terms of either trust or in any other part of the will from which an intention can be derived that the Theobald children must, in addition to surviving their mother, also survive Mrs. Walls. This testatrix ". . . fixed the event upon which membership in the class of takers would be ascertained . . ." (in re Metzgar, 395 Pa. 322, decided March 16, 1959) as the death of Mrs. Theobald and not of Mrs. Walls.

This will is its own best interpreter: Emmerich Estate, 347 Pa. 307. There is no ambiguity present requiring resort to artificial rules of construction. Counsel for exceptants argues that there is a paradox in the evaluation of the interests of the Theobald children. It is acknowledged that under the trust for their mother, their interests were contingent upon their surviving their mother (Elsbree Estate, 362 Pa. 494), whereas under the Walls' trust, the interests are now construed as vested. There is no paradox. As above indicated, when the youngest of the Theobald children attained age 21, the interests of all vested. At the time of their mother's death all of the children were living. The only condition which might have divested their interests was the birth and survival of children of Mrs. Walls. The adjudication properly cites, inter alia, McGlinn Estate, 320 Pa. 389, 393 (1936), which opinion, in turn, cites Manderson v. Lukens, 23 Pa. 31, 33, where the court stated:

" 'The question of vested or contingent is not to be tested by the certainty or uncertainty of obtaining the actual enjoyment; for that would make the character of the estate depend, not upon the terms of its creation, but on the form of the result. . . . If there is a present right to a future possession, though that right may be defeated by some future event, contingent or certain, there is nevertheless a vested estate. An unpossessed estate is vested, if it is certain to take effect in possession, by enduring longer than the precedent estate.' "

It is true that in construing the will, the court must be vigilant to ascertain if it was testator's intention to keep his estate entirely within the blood line. When courts have found such an intention, they have uniformly held future interests to be contingent rather than vested: Wood's Estate, 321 Pa. 497; Loving Estate, 159 Pa. Superior Ct. 339; Rowland's Estate, 151 Pa. 25, and others cited by exceptants. We are unable to find any such intention within the four corners of this will. The language in this disposition is expressed ". . . in such event I do give, devise and bequeath . . ." and leaves no doubt as to when the gift vests. Therefore, the "pay and divide" rule has no application.

The last point raised by exceptants is that when testatrix employed the phrase "then and in such an event", she intended the interests of the Theobald children in the Walls' trust to be contingent. The auditing judge in rejecting this argument cited Straus Estate, 351 Pa. 136 (1945), and McGlinn Estate, supra. In addition, we now cite Nass' Estate, 320 Pa. 380, wherein this court was sustained in holding that the phrase "then and in such case" was not of itself sufficient to render the interests contingent.

The exceptions are, therefore, dismissed and the adjudication confirmed absolutely.